UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZBETH MORELIS IBANEZ DAZA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-10214-RFL<br><br>**ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Re: Dkt. No. 3 |

  Before the Court is Petitioner's *ex parte* motion for temporary restraining order. (Dkt. No. 3 (the "Motion").) Petitioner filed her petition for writ of habeas corpus and Motion against Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran, Acting Director of ICE Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. On November 25, 2025, after arriving at an ICE facility in San Francisco for a periodic check-in appointment, Petitioner was detained by ICE. The evidence presented by Petitioner indicates that ICE agents did not inform her of the reason for her arrest.

  Now, Petitioner requests that this Court: (1) order respondents to "immediately release[] her from Respondents' custody and enjoin[] Respondents from re-detaining her absent further order of this Court;" (2) in the alternative, order respondents to "immediately release[] her from Respondents' custody and enjoin[] Respondents from re-detaining her unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that her physical custody is required;" and (3) "prohibit[] the government from transferring her out of this District and/or removing [her] from the country

1

until these habeas proceedings have concluded." (*See* Dkt. No. 4 at 15.) For the following reasons, the Motion is **GRANTED**, as modified below.

I.     BACKGROUND

The following facts are based on the petition for writ of habeas corpus and the declarations submitted in support of the Motion. Petitioner is from Colombia. After fleeing the country, she came to the United States in approximately November 2024, seeking asylum. She was apprehended by immigration officials at the border, and after it was determined that she posed little if any flight risk or danger to the community, they released her on her own recognizance. She subsequently filed an application for asylum.

As a condition of her release, Petitioner was required to periodically attend ICE check-in appointments. Petitioner's counsel represents that she has made all of her required check-ins and has not been arrested at any point since her release in 2024. On November 25, 2025, she arrived at an ICE facility in San Francisco for a check-in appointment. At some point after her arrival, ICE detained her.

Petitioner filed her habeas petition on November 25, 2025. Shortly after filing the petition, her counsel provided notice of the petition and a forthcoming motion for temporary restraining order, along with a copy of the petition, to Respondents' counsel. Later that day, Petitioner's counsel emailed Respondents with a copy of the Motion and supporting documents. In the Motion, Petitioner argues that her arrest and detention violates the Fifth Amendment rights to: (1) substantive due process, because she was detained despite posing no risk of flight or danger to the community; and (2) procedural due process, because she was deprived of the opportunity to contest her arrest and detention before a neutral decisionmaker prior to her detention. (*See* Dkt. No. 4.)

II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially

2

identical." (internal quotation marks and citation omitted)).  A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).  "[W]hen the Government is the opposing party," the final two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### III.    DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case.  Petitioner's counsel has set out specific facts in a declaration showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.  *See* Fed. R. Civ. P. 65(b)(1)(A).  Additionally, counsel states that they attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on November 5, 2025, regarding the habeas petition and Motion, and that they provided the Acting Chief a copy of the petition and Motion by email.  (*See* Dkt. No. 4-2); *see also* Fed. R. Civ. P. 65(b)(1)(B).

The Court finds that Petitioner has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in her favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv-05785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Garcia v. Bondi*, No. 3:25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (same); *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Petitioner be immediately released from custody, and that she be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into

custody.

Petitioner has a substantial private interest in remaining out of custody. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Even if Petitioner receives a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and is released at that point, she will continue to suffer the harm that is the subject of the Motion: her potentially erroneous ongoing detention. *See Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) (requiring a pre-deprivation hearing and noting that respondents "misapprehend[ed] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690. ICE had previously determined that Petitioner does not pose a risk under those criteria, and communicated no basis under those statutory purposes for arresting Petitioner. In these circumstances, the risk of erroneous deprivation appears high.

And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner without a hearing is "low," particularly in light of the fact that Petitioner has maintained lawful presence. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up). "[I]t follows inexorably from [the] conclusion" that Petitioner's

5

detention without a pre-detention hearing is "likely unconstitutional," that she has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see also Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854-BLF (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with . . . a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Singh v. Andrews*, No. 25-cv-00801, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

A temporary restraining order immediately releasing Petitioner is appropriate here to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt*

6

*Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to her likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).[1]

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Garro Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest), converted to preliminary injunction at 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-00647, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia*, 2025 WL 1676855, at *3 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years); *Enamorado v. Kaiser*, No. 25-cv-04072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Because "there is no realistic likelihood of harm to [Respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

---

[1] Because Petitioner's release simply returns her to the status quo, it is not a mandatory injunction, which is subject to a higher standard. In any event, even if Petitioner's release were understood to be a mandatory injunction, that standard would be met. "First, unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). And second, as detailed above, the merits of the case are not "doubtful." *Id.*

7

IV.     **ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and are **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker in which an individualized determination is made that she poses a flight risk or danger to public safety such that she must be detained.[2] This Order shall remain in effect through **Tuesday, December 9, 2025, at 9:00 p.m.**

The petition for writ of habeas corpus, Motion, and this Order **SHALL** be served on Respondents such that they receive actual notice as soon as practicable, and Petitioner shall file proof of such service by no later than **Monday, December 1, 2025**. Respondents shall provide a status report confirming Petitioner's release by **Monday, December 1, 2025**.

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in Courtroom 15 at the San Francisco Courthouse on **Tuesday, December 9, 2025, at 10:00 a.m.** why a preliminary injunction should not issue. Respondents shall file a response to the Motion by no later than **December 2, 2025**. Any reply shall be filed by **December 4, 2025**.

**IT IS SO ORDERED.**

Dated: November 25, 2025, at 7:39 p.m.

RITA F. LIN
United States District Judge

---

[2] Petitioner also asks the Court to order that she remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).