UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZBETH MORELIS IBANEZ DAZA,<br><br>            Plaintiff,<br><br>   v.<br><br>SERGIO ALBARRAN, et al.,<br><br>            Defendants. | Case No. 25-cv-10214-RFL<br><br>**ORDER ENTERING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 3, 8 |

      The parties do not dispute the following facts. After fleeing Colombia, Petitioner crossed the border from Mexico into California on November 2, 2024. She was immediately apprehended by immigration officials and transferred to a processing center in San Diego. There, immigration officials found her to be inadmissible and ordered her expedited removal. A few days before the scheduled removal, Petitioner claimed a fear of persecution if returned to Colombia. Immigration officials then conducted a Credible Fear Interview ("CFI") and determined that Petitioner's fear was credible. They subsequently released her on humanitarian parole. The Interim Notice Authorizing Parole issued to Petitioner stated that it was "valid for one year beginning from the date on this notice," which was November 25, 2024; that parole would "automatically terminate . . . at the end of the one-year period"; and that parole was "conditioned on [Petitioner] complying with the terms and conditions of [her] release." (*See* Dkt. No. 16-1 at 8.)[1] Those conditions included a requirement that Petitioner attend periodic check-in meetings with United States Immigration and Customs Enforcement ("ICE").

      On November 25, 2025, exactly one year into her parole, Petitioner attended one of those

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

check-in meetings in San Francisco and was detained. She commenced this action that same day, seeking issuance of a writ of *habeas corpus* on the basis that detaining her without a pre-detention hearing violated the Due Process Clause of the Fifth Amendment to the United States Constitution. She also filed a motion for a temporary restraining order. The Court granted the motion and ordered Petitioner's release. (*See* Dkt. No. 8 (the "TRO Order").) It also ordered Respondents to show cause why a preliminary injunction should not issue. Respondents filed a response, Petitioner filed a reply, and the parties stipulated to issuance of a decision without a hearing. For the reasons set forth below, the Court **ENTERS** a preliminary injunction.

I.   **LEGAL STANDARD**

To obtain a preliminary injunction, a petitioner "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "[I]f a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the [petitioner's] favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation and quotation marks omitted). "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) (citation omitted).

II.   **DISCUSSION**

The TRO Order held that Petitioner satisfied the preliminary injunction standard. (*See* TRO Order at 4-7); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (citation and quotation marks omitted)). That determination remains undisturbed.

   A.   **Serious Questions Going to the Merits**

Petitioner argues that detaining her violated her Fifth Amendment rights to:

(1) procedural due process, because she was deprived of the opportunity to contest her arrest and detention before a neutral decisionmaker prior to her detention; and (2) substantive due process, because she was detained despite posing no risk of flight or danger to the community. Respondents counter that Petitioner is subject to mandatory detention, which, according to them, nullifies her due process claims. As discussed below, Petitioner is not subject to mandatory detention, and there are at least serious questions going to the merits of her due process claims in the absence of mandatory detention.

### 1. Mandatory Detention

Respondents argue that Petitioner is subject to mandatory detention under either of two statutory provisions: (1) the mandatory detention of noncitizens within the expedited removal process; or, in the alternative, (2) the mandatory detention of noncitizens placed in ordinary removal proceedings who are not subject to expedited removal. *See* 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV), (b)(2)(A). Neither category of mandatory detention applies to Petitioner.

#### a. Expedited Removal Proceedings

Expedited removal applies only to noncitizens who, among other things, have "not been admitted or paroled into the United States." *See id.* § 1225(b)(1)(A)(iii)(II). Accordingly, those paroled into the United States are not eligible for expedited removal. *See Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025). That principle controls here. When immigration officials released Petitioner, they did so under 8 U.S.C. Section 1182's humanitarian parole provision. (*See* Dkt. Nos. 16 at 13, 16-1 at 8.) That provision expressly permits the United States Secretary of Homeland Security to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *See* 8 U.S.C. § 1182(d)(5)(A); s*ee also Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *9 n.4 (N.D. Cal. Sept. 26, 2025) ("At the hearing, the government . . . argued that the phrase 'paroled into the United States' in section

1225(b)(1)(A)(iii)(II) referred only to humanitarian parole under section 1182(d)(5)(A) . . . ."). Thus, immigration officials paroled Petitioner into the United States, and the expedited removal process, including its mandatory detention, no longer applies to her.

Respondents counter that "parole is not a determination that ICE no longer intends to fast-track removal" under the expedited removal process and that "Petitioner's parole does not constitute an admission" into the country. (*See* Dkt. No. 16 at 15.) But ICE's intentions and whether Petitioner was "admitted" are irrelevant. Expedited removal does not apply to those who have been paroled into the United States, and Respondents do not dispute that Petitioner fits that description. Respondents also argue that Petitioner is subject to mandatory detention pending a CFI, as she expressed a fear of persecution if returned to Colombia. They do not, however, explain why they may now conduct a second CFI, given that they already did so in November 2024 when Petitioner first entered the country. Moreover, CFIs are conducted as part of the expedited removal process, and as explained above, Petitioner is no longer subject to expedited removal.

The Notice to Appear issued to Petitioner in November 2024 upon a finding that she had a credible fear of persecution if returned to Colombia confirms that she is no longer subject to expedited removal. (*See* Dkt. No. 16-1 ¶ 7.) First, that notice states that the "Section 235(b)(1) order," *i.e.*, the Section 1225(b)(1) expedited removal order, "was vacated." (*See* Dkt. No. 20-1 at 1.) Second, the notice describes Petitioner as being "[i]n removal proceedings under section 240 of the Immigration and Nationality Act." (*See id.*) Section 240 of the statute is codified at 8 U.S.C. Section 1229a, which sets forth the procedures of ordinary removal proceedings. *See Galindo-Romero v. Holder*, 640 F.3d 873, 875 n.1 (9th Cir. 2011).

### b.    Ordinary Removal Proceedings

The Interim Notice Authorizing Parole issued to Petitioner stated that it would automatically terminate within one year of the date of the notice. That automatic termination date fell on the exact date that ICE detained Petitioner. Moreover, although Respondents do not say so expressly, it appears that they also decided to terminate Petitioner's parole because,

according to Respondents, Petitioner missed two "biometric" check-ins with ICE.  (*See* Dkt. No. 16 at 11.)  Petitioner disputes that she missed any check-ins.  (*See* Dkt. No. 17-1 ¶ 8.)  But regardless of whether validly terminated for missed check-ins or automatically terminated at the end of the one-year period, Petitioner is no longer on humanitarian parole, and Petitioner does not argue otherwise.

When a Section 1182 humanitarian parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  *See* 8 U.S.C. § 1182(d)(5)(A).  As an initial matter, the "returned to the custody" language of this provision does not "affirmatively authorize[] detention."  *See Clark v. Martinez*, 543 U.S. 371, 385 (2005); *see also Qasemi v. Francis*, No. 25-cv-10029-LJL, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) ("[T]he instruction that the noncitizen be 'returned to the custody from which he was paroled' does not mean a return to physical custody.  The law and the statute draw a distinction between 'detention' and 'custody.'").  Respondents do not argue otherwise.  So mere termination of Petitioner's parole does not result in her mandatory detention.  *See, e.g.*, *Rodriguez-Acurio v. Almodovar*, No. 25-cv-06065-NJC, 2025 WL 3314420, at *18 (E.D.N.Y. Nov. 28, 2025).

Rather, termination of parole requires that Petitioner's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  *See* 8 U.S.C. § 1182(d)(5)(A).  An "applicant for admission" refers to "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  *See id.* § 1225(a)(1).  Petitioner does not dispute that she satisfies this definition as a noncitizen whose Section 1182 parole did not result in her admission.  *See id.* § 1182(d)(5)(A) ("[P]arole of such alien shall not be regarded as an admission of the alien . . . .").

As an applicant for admission not eligible for expedited removal, Petitioner remains subject to regular removal proceedings.  *See Innovation L. Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019).  Accordingly, she may be detained if certain criteria are met, as set forth in

5

Section 1226(a). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (Section 1226 "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal"). Critically,

> [d]etention pursuant to section 1226(a) is nonmandatory. So long as the noncitizen was not charged with, arrested for, or convicted of certain criminal offenses enumerated in section 1226(c), the government has discretion to release them on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole.

*Valencia Zapata*, 2025 WL 2741654, at *2 (citation and quotation marks omitted).

Respondents nonetheless argue that Petitioner is subject to mandatory detention under Section 1225(b)(2), which requires detention of those "seeking admission." *See* 8 U.S.C. § 1225(b)(2)(A). The statute does not define the term "seeking admission," but this Court has previously interpreted the phrase to refer to "arriving alien[s]" and not to those "who have been in the country for years." *See Valencia Zapata*, 2025 WL 2741654, at *10. Numerous courts both within and outside this District have overwhelmingly reached similar conclusions. *See, e.g.*, *Bernal v. Albarran*, No. 25-cv-09772-RS, 2025 WL 3281422, at *4 (N.D. Cal. Nov. 25, 2025) ("seeking admission" refers to "arriving alien[s]," which excludes those "who are now in the interior of the country"); *Barco Mercado v. Francis*, No. 25-cv-06582-LAK, 2025 WL 3295903, at *5 (S.D.N.Y. Nov. 26, 2025) ("seeking admission" refers to "those noncitizens actively seeking lawful entry," which excludes those "who already ha[ve] entered the United States illegally and [are] living here" (quotation mark omitted)). At the time of her November 2025 detention, Petitioner was not an arriving noncitizen seeking entry into the country and had been living here for one year. Accordingly, she was not seeking admission at the time of her detention, so Section 1225(b)(2)'s mandatory detention provision does not apply.

Respondents reject this conclusion based on *In re Hurtado*, 29 I & N. Dec. 216 (BIA 2025), a decision in which the Board of Immigration Appeals held that "aliens who are present in the United States without admission are applicants for admission," regardless of how long they have been living in the country. *See id.* at 220-21. This Court, however, has already declined to

follow *Hurtado*, as "its reasoning is [] at odds with the text of" the statute. *See Valencia Zapata*, 2025 WL 2741654, at *10. District courts around the country have overwhelmingly reached similar conclusions. *See, e.g.*, *Quituizaca v. Bondi*, No. 25-cv-06527-EAW, 2025 WL 3264440, at *3-4 (W.D.N.Y. Nov. 24, 2025); *Martinez v. Noem*, No. 25-cv-12029-ARW, 2025 WL 3145103, at *4-6 (N.D Ill. Nov. 11, 2025); *J.A.M. v. Streeval*, No. 25-cv-00342-CDL, 2025 WL 3050094, at *4-5 (M.D. Ga. Nov. 1, 2025); *Orellana v. Noem*, No. 25-cv-00112-RGJ, 2025 WL 3006763, at *3-5 (W.D. Ky. Oct. 27, 2025); *Bethancourt Soto v. Soto*, No. 25-cv-16200-CPO, 2025 WL 2976572, at *5-7 (D.N.J. Oct. 22, 2025); *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908, at *4-6 (D. Colo. Oct. 17, 2025); *Chang Barrios v. Shepley*, No. 25-cv-00406-JAW, 2025 WL 2772579, at *9 (D. Me. Sept. 29, 2025).

    **2.**    **Due Process Claims**

        **a.**    **Procedural Due Process**

In the TRO Order, the Court held that "Petitioner has shown at least that there are serious questions going to the merits" of her procedural due process claim. (*See* TRO Order at 4 (quotation marks omitted).) Specifically, the Court applied the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and determined that Respondents would need to provide notice and a hearing before a neutral decisionmaker before re-detaining Petitioner. (*See* TRO Order at 4-5.) Respondents do not object to that finding and instead argue that *Mathews* simply does not apply to noncitizens subject to mandatory detention. As discussed above, however, Petitioner is not subject to mandatory detention, so this argument fails.

The Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), does not alter this conclusion. There, the Court held that a noncitizen detained at or near the border upon crossing over into the country cannot be said to have "effected an entry," such that the due process clause guarantees them "only those rights *regarding admission* that Congress has provided by statute." *See id.* at 140 (emphasis added). Here, however, at the time of her November 2025 detention, Petitioner was not at or near the border and had already been living in the country for a year. Moreover, Petitioner does not

challenge any procedures regarding admission but rather her detention. *Thuraissigiam*, therefore, neither limits her to the procedures afforded by statute nor strips her of the benefits of *Mathews*. *See, e.g.*, *Valencia Zapata*, 2025 WL 2741654, at *7; *Aviles-Mena*, 2025 WL 2578215, at *4. Accordingly, the Court's prior determination that there are at least serious questions going to the merits of Petitioner's procedural due process claim stands.

### b. Substantive Due Process

Petitioner has also shown that there are at least serious questions going to the merits of her substantive due process claim. "Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs. Generally speaking, substantive due process protects an individual's fundamental rights to liberty and bodily autonomy." *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) (citations and quotation marks omitted). That liberty includes freedom from government detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Civil detention violates due process outside of certain special and narrow nonpunitive circumstances." *Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018) (citation and quotation marks omitted). In the immigration context, there are just two such circumstances that permit civil detention: "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *See Valencia Zapata*, 2025 WL 2741654, at *11 (citing *Zadvydas*, 533 U.S. at 690) (quotation marks omitted). Outside of these circumstances, "the government has no legitimate interest in detaining individuals." *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

When immigration officials paroled Petitioner under Section 1182(d)(5)(A), they necessarily determined that she did not present a flight risk or danger to the community. *See* 8 C.F.R. § 212.5(b); *see, e.g.*, *A.F.A.M. v. Albarran*, No. 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025). As discussed above, Respondents assert that Petitioner missed two biometric check-ins with ICE, which Petitioner disputes. Assuming she did miss those check-ins, that alone does not indicate that she presented a flight risk or danger to the

community. *See, e.g.*, *A.F.A.M.*, 2025 WL 3752190, at *4 ("Respondents' contention that A.F.A.M.'s re-detention resulted from his failure to attend two ICE check-ins – which A.F.A.M. disputes – does not show that he is a flight risk or danger to the community." (citation omitted)); *Bernal*, 2025 WL 3281422, at *5-6 (no showing of flight risk or danger to community despite alleged parole violations, which included, among other things, "failing to complete a self-report check-in").

In sum, "Petitioner[] ha[s] already been determined not to be dangerous to the community or [a] flight risk[] by immigration officials at the time of [her] initial release, and [there is no evidence that she now presents] such [a] risk[]. As such, Petitioner[] ha[s] demonstrated at least a serious question as to whether [her] detention would violate [her] substantive due process rights[.]" *Valencia Zapata*, 2025 WL 2741654, at *12.

B.  **Remaining Preliminary Injunction Factors**

In the TRO Order, the Court found that Petitioner had demonstrated a likelihood of irreparable harm and that the balance of the equities and the public interest tipped sharply in her favor. (*See* TRO Order at 5-6.) Respondents do not dispute the analysis underlying those determinations and instead essentially argue that Petitioner does not satisfy those preliminary injunction factors because she is subject to lawful mandatory detention and has not showed a likelihood of success on the merits of her due process claims. As discussed above, however, Petitioner is not subject to mandatory detention, and she has shown at least serious questions going to the merits of her claims, so this argument fails. Accordingly, the Court's prior determination that Petitioner satisfies the remaining preliminary injunction factors stands.

III.  **CONCLUSION**

For the foregoing reasons, the Court **ENTERS** the following preliminary injunction: Respondents are **ENJOINED** and **RESTRAINED** from re-detaining Petitioner: (1) without notice and a pre-deprivation hearing before a neutral decisionmaker in which an individualized determination is made that she poses a flight risk or danger to public safety such that she must be detained; or (2) in the absence of a material change in circumstances justifying her detention.

Respondents are also **ENJOINED** and **RESTRAINED** from removing Petitioner from the United States to preserve this Court's jurisdiction during the pendency of the action. This Order shall remain in effect until further order of the Court.

    **IT IS SO ORDERED.**

Dated: January 12, 2026

                                                  RITA F. LIN
                                                  United States District Judge